UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BILLY SULLIVAN,

        Plaintiff,

v.

RON HEWSON and
SANDI HEIKKINEN,

        Defendants.

_____/

Case No. 2:23-cv-148

HON. JANE M. BECKERING
U.S. District Judge

## REPORT AND RECOMMENDATION

**I. Introduction**

This Report and Recommendation (R&R) addresses Defendant Sandi Heikkinen's motion for summary judgment due to Plaintiff's failure to exhaust administrative remedies. (ECF No. 17.) Sullivan filed a response to Defendant Heikkinen's motion for summary judgment September 23, 2024. (ECF No. 20.)

State prisoner Billy Sullivan filed his complaint under 42 U.S.C. § 1983 alleging that the two Defendants – Baraga Correctional Facility (AMF) Corrections Officer (CO) Ron Hewson and CO Sandi Heikkinen – violated his First and Eighth Amendment rights. (ECF No. 1.)

Sullivan states that on August 18, 2022, while he was on the 4-Unit yard at AMF, a group of inmates assaulted multiple AMF COs during yard time. (*Id.*) Sullivan says he did not participate in this assault. Nevertheless, on August 29, 2022, he was convicted of assault on a staff member. (*Id.*) A few weeks later, on September

20, 2022, Sullivan was transferred from AMF to Marquette Branch Prison (MBP) as a result of the conviction. (*Id.*, PageID.2.)

Sullivan states that on February 22, 2023, he was transferred from MBP back to AMF. (*Id.*) Sullivan says that two days later, on February 24, 2023, COs Hewson and Heikkinen brought Sullivan his allowable segregation property in a duffel bag. (*Id.*) CO Heikkinen allegedly approached Sullivan's cell first and ordered the Plaintiff to back up to the cell door so that she could "cuff him up." (*Id.*, PageID.3.) As Sullivan complied and Heikkinen secured handcuffs to his wrists, the Plaintiff asked Heikkinen if she would bring him a grievance form. (*Id.*) Sullivan explained that he believed his transfer back to AMF following his staff assault conviction was improper. (*Id.*) Sullivan says that CO Heikkinen replied, "Oh, Sullivan…You know how things go around here by now with guys accused of assaulting our staff here at Baraga – they've got nothing coming. They'd be lucky to get their food trays." (*Id.*, PageID.3.) Sullivan says that CO Hewson agreed with the statement, saying, "Yeah. What, you wanna file a grievance cause you decided to assault staff or something?" (*Id.*)

Sullivan says that CO Heikkinen then ordered him to step forward and to sit on the bunk so that CO Hewson could enter the cell. (*Id.*) CO Hewson came into the cell and placed Sullivan's duffel bag on the floor. (*Id.*) Sullivan alleges that Hewson placed the property on the floor and immediately turned to take "an open-handed swing" at the Plaintiff. (*Id.*) Hewson allegedly stated, "That's for what happened

2

over in 4-Block!" as he smacked Sullivan. (*Id.*) Sullivan says he curled into a ball to protect himself. (*Id.*, PageID.4.)

COs Hewson and Heikkinen exited the cell, closing it behind them as Heikkinen allegedly said, "Whoa! Guess you'll be needing a grievance for that as well, huh? Good luck with that." (*Id.*) Sullivans says that CO Heikkinen then ordered him to back up to the cell door so she could remove the handcuffs. (*Id.*) Sullivan states that as he complied, CO Hewson added that, "Those grievances will have you walking on eggshells around here." (*Id.*) Sullivan says he was able to obtain a grievance form from another officer the next day. (*Id.*)

Only Defendant CO Heikkinen moves for summary judgment. (ECF No. 17.) CO Heikkinen argues that Sullivan did not exhaust his administrative remedies by naming Heikkinen in a properly exhausted grievance through Step III of the MDOC grievance process. (*Id.*)

A review of the records before the Court indicates that Sullivan filed a Step I grievance, a Step II appeal, and a Step III appeal naming CO Heikkinen. In the opinion of the undersigned, Sullivan named CO Heikkinen in a properly exhausted grievance before he filed this lawsuit. Therefore, it is respectfully recommended that the Court deny CO Heikkinen's motion for summary judgment.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of*

*Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than

---

[1] The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, 96 F.4th 911, 923 (6th Cir. 2024), *cert. granted*, No. 23-1324, 2024 WL 4394132 (U.S. Oct. 4, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers

5

are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions provide adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable

6

issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ Q, W. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶ DD. The respondent at Step II is designated by the policy. *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II.

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.

8

> *See id*. at 325.   We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

**IV. Analysis**

In her motion for summary judgment, Defendant Heikkinen argues that Sullivan did not exhaust any of the claims asserted against Defendant Heikkinen in his complaint. (ECF No. 18.)  Heikkinen acknowledges that Sullivan named "both COs Hewson and Heikkinen at Step I," but argues that Sullivan failed to allege "specific unconstitutional conduct" by CO Heikkinen in that grievance because of her characterization as a "bystander." (*Id.*, PageID.74.)  Further, CO Heikkinen notes that the Step II and Step III appeals only address CO Hewson's conduct and asserts that these decisions indicate the grievance was against CO Hewson only. (*Id.*)  In his response to CO Heikkinen's motion for summary judgment, Sullivan asserts that he filed and properly exhausted grievances on the issues presented in his complaint. (ECF No. 20.)

The allegations set forth by Sullivan in his complaint mirror those set forth in his grievance and grievance appeals.  In his complaint, Sullivan asserts that CO Heikkinen handcuffed him, was in the cell when CO Hewson allegedly slapped

---

[2]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

9

Sullivan, and did nothing to aid Sullivan following the slap. (ECF No. 1, PageID.3-4.) In his grievance and grievance appeals, Sullivan asserts that Heikkinen handcuffed him, was in the cell when CO Hewson allegedly slapped him, and did nothing to aid Sullivan following the slap. (ECF No. 1-1, PageID.10-11; ECF No. 1-2, PageID.13-15; ECF No. 18-3, PageID.91-92.) Furthermore, the record indicates that Sullivan's grievance and grievance appeals were addressed on the merits at each step of the grievance process. (ECF No. 18-3, PageID.91-95.)

In his complaint, Sullivan details specific conduct by Heikkinen that he alleges violated his First and Eighth Amendment rights. (ECF No. 1.) Sullivan asserts in his complaint that CO Heikkinen placed Sullivan in handcuffs before CO Hewson entered the cell, that CO Heikkinen was present in the cell when CO Hewson allegedly slapped the handcuffed Plaintiff, that CO Heikkinen closed the door behind CO Hewson following the alleged slap, and that she allegedly stated, "Whoa! Guess you'll be needing a grievance for that as well, huh? Good luck with that," upon her exit from the cell. (ECF No. 1, PageID.4.) Sullivan alleges in his complaint that CO Heikkinen placed him in handcuffs so that CO Hewson could enter his cell and assault him. (*Id.*)

Sullivan asserts that he detailed the issues in his complaint in Grievance <u>AMF-23-03-0314-26A</u>. (*Id.*) Sullivan attached grievance forms to his complaint as Exhibits A and B. (ECF Nos. 1-1, 1-2.) CO Heikkinen further provided copies of the grievance form at Step I, Step II, and Step III with her motion for summary judgment. (ECF No. 18-3.)

Sullivan states that before he filed Grievance AMF-23-03-0314-26A, he made attempts to resolve his complaint. (ECF No. 1-1.) On February 24, 2023 or February 25, 2023, Sullivan says he talked to CO Bailey and CO Hebert about the incident. (*Id.*) Sullivan says that CO Hebert then provided him with grievance forms. (*Id.*) Sullivan included a description of these interactions on his Step I grievance form, a portion of which is shown below.

> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 2-24-23/2-25-23
> If none, explain why. On A few Rounds After incident I talked to C/o Bailey About what happened (he shook his head) And said these people Just Dont Care! C/o Bailey Attempted to Find Grievance to NO AvAiL! 2/25/23 I talked to C/o Hebert my unit Rock officer who Informed me to File Grievance And Brought me Two!

(*Id.*, PageID.10.)

In Grievance AMF-23-03-0314-26A at Step I, Sullivan states that Hewson assaulted him as "Heikkinen looked-on." (ECF No. 18-3, PageID.94.) In the grievance, Sullivan says that Hewson should be "held accountable, Along with C/O Heikkinen." (*Id.*) Another portion of that Step I grievance is shown below.

> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. On the Above Date at Approximately 5:30p.m. – 7p.m., C/o Hewson violated my well Being! C/o Heikkinen and C/o Hewson Brought my Seg. Property to my cell (3-A-113). C/o Heikkinen Explained to me that Soon As she put hand-cuffs on me, that I'm to have a seat on my Bunk. C/o Heikkinen cuffed me up, I went And sat down on Bunk C/o Heikkinen opened my Door, C/o Hewson Picked my Property Bag-up, "walked All the way into my cell, Dropped my Property, walked over to me And slapped me on my head, As I turned to Avoid Contact. C/o Hewson said "That's For what happened over in 4 Block?!" I was Assaulted by C/o Hewson As C/o Heikkinen Looked-on! I'm in total Fear For writing this Grievance And, the Assault on officers in 4 Block?! I'm Begging that the whole camera Footage Be reviewed, C/o Hewson Be Escorted off the Compound, Charged with Assault, And held Accountable, Along with C/o Heikkinen for Role in violating Policy and Rules of cuffing me And NOT having me Exit my cell upon Giving me my Property! C/o Hewson Broke Policy, Rules, Regulations, the Laws, And should Be Fired effective immediately! (Period) Failed to uphold Duties As A C/o   Billy Sullivan ™
> THIS IS Retaliation!                                                        Grievant's Signature

(*Id.*)

The MDOC's response to this Step I grievance notes that Sullivan claimed "that Corrections Officer Heikkinen observed the assault watched the assault take place." (*Id.*, PageID.95.) This complaint summary is shown below.

> **COMPLAINT SUMMARY:**
> Prisoner Sullivan claims that Corrections Officer Hewson entered his cell and assaulted him when C/O Hewson delivered his property. He further claims that Corrections Officer Heikkinen observed the assault watched the assault take place.

(*Id.*)

A summary of the investigation of the grievance at this stage notes that CO Heikkinen was interviewed. CO Heikkinen stated that she "did not assault prisoner Sullivan." (*Id.*) The grievance respondent concluded, "[t]here is no evidence to support the claim by the grievant that he was assaulted by C/O Hewson when he was delivering prisoner Sullivan his property." (*Id.*) The investigation summary and decision summary are shown below.

> **INVESTIGATION SUMMARY:**
> I interviewed prisoner Sullivan who stated he didn't have anything to add. I asked him if he received any injury due to the alleged assault. He said, "No"
>
> I interveiwed C/O Heikkinen. She stated that C/O Hewson did not assault prisoner Sullivan when he entered the cell to give him his property.
>
> I interviewed C/O Hewson. He stated that he did enter the cell but it was to place a proprty bag inside the cell. He stated that he did not assault prisoner Sullivan when he entered the cell.
>
> The video surveillance system was reviewed. C/O Hewson is seen entering the cell for approximately 6 seconds with a bag of prisoner property. There is no video surveillance inside of the cell.

(*Id.*)

> **DECISION SUMMARY:**
> There is no evidence to support the claim by the grievant that he was assaulted by C/O Hewson when he was delivering prisoner Sullivan his property.

(*Id.*)

Sullivan filed a Step II appeal of this decision on April 1, 2023. (*Id.*, PageID.92.) At Step II, Sullivan asserted that "[he] was assaulted by C/O Hewson as C/O Heikkinen assisted and look-on." (*Id.*) In the April 20, 2023 review of the Step

12

II appeal, Warden Kris Taskila stated that "[n]o information has been presented that would indicate [Sullivan's] Step I have not been appropriately addressed. Step I response is appropriate, and your appeal is denied." (*Id.*, PageID.93.) The Step II response is shown below.

> **STEP II – Response:**
>
> A review of your Step II appeal has been completed and your concern regarding that you claim Officer Hewson entered your cell and assaulted you while he delivered your property. The response provided at Step I appropriately addresses the merits of the grieved issue. I find no violations of PD 04.05.110 Use of Force, PD 02.03.109 Discriminatory Harassment, PD 03.03.130 Humane Treatment and Living conditions for Prisoners, PD 04.05.120 Segregation Standards or any other policies or procedures. No information has been presented that would indicate your Step I have not been appropriately addressed. Step I response is appropriate, and your appeal is denied.

(*Id.*, PageID.93.)

Sullivan then filed a Step III appeal, which was received May 11, 2023. (*Id.*, PageID.91.) Sullivan stated that "C/O Heikkinen and C/O Hewson did what they intended to do. These C/O's were in concert when C/O Hewson entered my cell for 6 seconds and, assaulted me! C/O Heikkinen did nothing to protect me, nor did she report this crime!" (*Id.*, PageID.92.) Following review by the Grievance Section of the Office of Legal Affairs, Richard D. Russell denied Sullivan's Step III appeal stating that "[u]pon examination it has been determined that [Sullivan's] issue was in fact considered, investigated, and a proper decision was rendered." (*Id.*, PageID.91.) The Step III appeal and the Step III grievance decision are shown below.



(*Id.*, PageID.92.)

> **STEP III GRIEVANCE DECISION**
>
> Rec #: 143234
> 26A
>
> To Prisoner:        Sullivan        #: 709695
> Current Facility:   AMF
> Grievance Identifier: AMF-23-03-0314-26A
> Step III Received:  5/11/2023
>
> Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". ==Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.==
>
> ==**THE STEP III APPEAL IS DENIED.**==
>
> THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

(*Id.*, PageID.91.)

Sullivan filed Grievance <u>AMF-23-03-0314-26A</u> at Step I and properly appealed that grievance through Step III. Sullivan named CO Heikkinen in grievances and appeals at Step 1, Step II, and Step III. Sullivan addressed claims in his complaint against CO Heikkinen at each step of the grievance and appeals process, stressing in the initial grievance and later appeals that CO Heikkinen violated his rights precisely because she "did nothing" and acted as a bystander as CO Hewson allegedly assaulted him. (*Id.*, PageID.92)

CO Heikkinen asserts that Grievance <u>AMF-23-03-0314-26A</u> fails to allege unconstitutional conduct, instead, describing her as a bystander. (ECF No. 18, PageID.74.) Defendant's motion is a motion for summary judgment for failure to exhaust, it is *not* a motion to dismiss for failure to state a claim upon which relief can be granted nor is it a motion for summary judgment on the merits of the case. (ECF

14

No. 17.) Here, the Plaintiff exhausted his claim that CO Hewson assaulted him while CO Heikkinen cuffed him and looked on.

Therefore, it is the opinion of the undersigned that CO Heikkinen was named in a properly exhausted grievance and should not be dismissed from this case.

### V. Recommendation

The undersigned respectfully recommends that this Court deny CO Heikkinen's motion for summary judgment.

If the Court accepts this recommendation the following First and Eighth Amendment claims against Defendants remain:

(1) **CO Hewson:** assault, excessive force, and retaliation on February 24, 2023.

(2) **CO Heikkinen:** observation of assault, failure to protect, and retaliation on February 24, 2023.


Dated:   October 24, 2024                         /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).